IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 13-0059-WS-M |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

ORDER

This matter comes before the Court on defendant's Motion for Partial Summary Judgment (doc. 35). The Motion has been briefed and is ripe for disposition.

I. **Relevant Background.**

Plaintiff, Joseph Washington, brought this action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 ("FTCA"). According to the well-pleaded factual allegations of the Complaint (which defendant has not disputed for summary judgment purposes), Washington was a customer at the U.S. Postal Service facility on West Capitol Street in Demopolis, Alabama, on July 27, 2011. (Doc. 1, ¶ 6.) After concluding his business, Washington exited the Post Office and walked outside across a flat concrete surface with embedded metal "non-slip" strips, between two sets of exterior steps. (*Id.*, ¶ 7.) Washington maintains that the concrete had eroded, causing the metal strips to protrude above the flat surface by more than a quarter inch. (*Id.*) As Washington walked across that surface, the toe of one of his shoes caught on one of these raised metal strips. He fell backwards, with his left knee striking the concrete. (*Id.*) As a result, Washington's muscles and ligaments were torn and he sustained significant damage to his left leg. (*Id.*) The Complaint alleges that there were no warning signs to alert Washington or other postal patrons to the hazard posed by the exposed metal strips, and that he was unaware of the danger until he tripped and fell. (*Id.*, ¶¶ 8-10.)

Based on these factual allegations, Washington brings a single claim against the Government for negligence, wantonness or recklessness under the FTCA. (Doc. 1, ¶¶ 15-23.)

The Complaint generally alleges that Washington has received treatment (including surgery and physical rehabilitation) for knee and leg injuries (including "a left quadriceps tendon rupture with medial and lateral meniscal tears") from various medical providers, including the Bryan Whitfield Memorial Hospital and Tropeano Orthopedics & Sports Medicine, both in Demopolis, Alabama. (*Id.*, ¶ 12.) A plain reading of the Complaint suggests that Washington's medical expenses constitute a significant component of the compensatory damages that he seeks to recover.

The central fact underlying the Government's Motion is that substantial portions of Washington's medical bills have already been paid by Medicare or the Department of Veterans Affairs (the "VA"). This fact appears uncontroversial. Indeed, plaintiff readily admits that "Mr. Washington's hospital and surgical expenses to date have been paid through the Medicare program and The Department of Veterans Affairs." (Doc. 43, at 1.)[1] The crucial – and, indeed, the only contested – issue animating the Government's Motion for Partial Summary Judgment is whether Washington is barred in this litigation from recovering those medical expenses that Medicare and the VA have already paid.[2]

---

[1] The summary judgment record corroborates the undisputed nature of this point. Specifically, the Government's Exhibits 1 through 3 (doc. 52) provide at least anecdotal evidence that Medicare and the VA paid for medical treatment of Washington's injured knee and leg. The exact sums those agencies have expended, and the precise amount of any differential between paid and unpaid amounts, is not material for summary judgment purposes. Rather, the central question presented on Rule 56 review is if and how those Medicare and VA payments should factor into any damages award at trial.

[2] To be sure, the Government also "moves for partial summary judgment that … this Case will be tried by the Court, without a jury" (doc. 35, at 5) because there is no right to jury trial in FTCA cases. The Court need not linger on this question. Plaintiff has "agree[d] and stipulate[d] that pursuant to the Federal Tort Claims Act this matter is due to be conducted as a bench trial." (Doc. 43, at 3.) The law on this point is well settled. *See, e.g., Denson v. United States*, 574 F.3d 1318, 1333 n.45 (11th Cir. 2009) ("By statute, FTCA claims are tried to the bench."); *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995) ("Appellant's FTCA action against the United States does not entitle him to a jury fact-finder."); *Daniel v. U.S. Marshall Service*, 2006 WL 1912756, *3 (11th Cir. July 12, 2006) ("With the exception of § 1346(a)(1), a tax provision, any action against the United States under section 1346 shall be tried by the court without a jury.") (citation and internal quotation marks omitted). Because everyone agrees that this is a non-jury matter, and Magistrate Judge Milling has already ruled that "this is a non-jury action" (doc. 40), the Motion for Partial Summary Judgment is **moot** insofar as the Government
(Continued)

## II. Analysis.

For summary judgment purposes, the parties agree that the substantive law of Alabama governs Washington's FTCA claim. (Doc. 35, at 3; doc. 43, at 2.)[3] As such, Washington's ability in this action to recover amounts paid towards his medical bills by Medicare and the VA must be evaluated by reference to Alabama law. The crux of the parties' dispute on summary judgment is whether Alabama's collateral source rule retains continuing vitality today.

Traditionally, as a matter of Alabama common law, "[t]he collateral source rule provide[d] that an amount of damages is not decreased by benefits received by a plaintiff from a source wholly collateral to and independent of the wrongdoer." *Williston v. Ard*, 611 So.2d 274, 278 (Ala. 1992).[4] On summary judgment, however, the Government maintains that "Alabama has repealed the collateral source rule in regard to medical and hospital expenses." (Doc. 35, at 2-3.) By contrast, Washington insists that "Alabama has not repealed the collateral source rule." (Doc. 43, at 2.) Careful examination reveals that the source of the parties' disagreement is imprecise language utilized in case law and briefs. In actuality, the current status of Alabama's collateral source rule is not nearly as muddled, confusing and dichotomous as the parties' briefs would seem to indicate.

---

requests summary judgment on the purely procedural question of whether this case is to be tried to a judge or a jury.

[3] Binding precedent supports this view. *See, e.g., Schippers v. United States*, 715 F.3d 879, 887 n.8 (11th Cir. 2013) ("Under the FTC, the applicable law is the whole law of the State where the act or omission occurred ….") (citations and internal marks omitted); *Bravo v. United States*, 532 F.3d 1154, 1160-61 (11th Cir. 2008) ("The components and measure of damages in FTCA claims are taken from the law of the state where the tort occurred.") (citations and internal marks omitted); *Hassan v. U.S. Postal Service*, 842 F.2d 260, 262 n.3 (11th Cir. 1988) ("Courts assess damages under the Federal Torts Claims Act pursuant to the law of the state of injury – except to the extent that the state permits punitive damages.").

[4] A typical policy justification bolstering this common-law rule was as follows: "[R]educing recovery by the amount of the benefits received by the plaintiff would be, according to most courts, granting a 'windfall' to the defendant by allowing him a credit for the reasonable value of those benefits. … If there must be a windfall, it is usually considered more just that the injured person should profit, rather than let the wrongdoer be relieved of full responsibility for his wrongdoing." *American Legion Post No. 57 v. Leahey*, 681 So.2d 1337, 1338 (Ala. 1996) (citation omitted).

In its classic formulation, Alabama's collateral source rule meant that a defendant in a personal injury case could not obtain a reduction in a plaintiff's damages award based on that plaintiff's receipt of medical benefits from a collateral source. Pursuant to that rule, "any evidence of the receipt of such benefits [was rendered] irrelevant and inadmissible." *McCormick v. Bunting*, 99 So.3d 1248, 1250 n.3 (Ala.Civ.App. 2012); *see also American Legion Post No. 57 v. Leahey*, 681 So.2d 1337, 1339 (Ala. 1996) ("This Court has consistently held that collateral source evidence is inadmissible."). Thus, under the old common-law rule, a defendant in the Government's position would be barred from offering evidence that the plaintiff's medical expenses had been paid by a third party, much less receiving an offset or credit in the damages award for those third-party payments.

Things changed in 1987, when the Alabama legislature enacted Alabama Code § 12-21-45. That section provides, "In all civil actions where damages for any medical or hospital expenses are claimed …, evidence that the plaintiff's medical or hospital expenses have been or will be paid or reimbursed shall be admissible as competent evidence." Ala. Code § 12-21-45(a). Furthermore, the statute mandates as follows: "Upon proof by the plaintiff to the court that the plaintiff is obligated to repay the medical or hospital expenses which have been or will be paid or reimbursed, evidence relating to such reimbursement or payment shall be admissible." § 12-21-45(c). On its face, § 12-21-45(a) abrogates the portion of the common-law rule that forbade defendants from presenting evidence of medical payments made by a collateral source. There is no question that this evidentiary proscription of Alabama's common-law collateral source rule has been abolished by the legislature. Contrary to the old common-law rule, a defendant in a personal injury action governed by Alabama law may now offer evidence that the plaintiff's medical or hospital expenses were or will be paid or reimbursed by a third party. In the wake of § 12-21-45, it is error for a trial court to forbid a defendant from introducing evidence of collateral-source payments for a plaintiff's medical expenses. *See, e.g., McCormick*, 99 So.3d at 1250 ("the trial court erred as a matter of law in precluding McCormick from introducing evidence of the collateral-source payments for Bunting's medical and hospital expenses"); *Crocker v. Grammer*, 87 So.3d 1190, 1194 (Ala.Civ.App. 2011) ("Crocker should have been allowed to introduce into evidence third-party medical and hospital payments made on behalf of Grammer, and she should have been allowed to argue to the jury that Grammer's damages should be reduced on account of those payments.").

Where the plot thickens is in the Government's heavy reliance on the following passage from a 1993 Alabama Supreme Court opinion: "[T]he collateral source rule, insofar as it allowed recovery against a tort-feasor of medical expenses paid by a collateral source, was abrogated by Ala.Code 1975, § 12-21-45." *Senn v. Alabama Gas Corp.*, 619 So.2d 1320, 1325 (Ala. 1993). Based on that singular sentence, and the *Senn* Court's choice of the word "abrogated" without qualifiers, the Government argues, "Plaintiff is not entitled to a recovery against the United States to the extent that the United States paid or satisfied any medical or hospital expenses." (Doc. 35, at 3.)

A closer look at *Senn* and other Alabama authorities spanning the last two decades yields a different conclusion. At issue in *Senn* was a defendant's assignment of error to the trial court's failure to give requested jury instructions tracking the pre- § 12-21-45 iteration of the collateral source rule. The *Senn* Court was not called upon to decide – and did not decide – that under the 1987 statute a plaintiff can <u>never</u> recover medical expenses for which a collateral source had paid. It is thus an oversimplification to read *Senn* as categorically sounding the death knell on plaintiffs' ability to recover medical expenses paid by someone else. Instead, Alabama authorities have consistently interpreted both § 12-21-45 and *Senn* as meaning that evidence of collateral-source payments is now properly admissible, but that it is left to the fact finder's discretion to determine whether and, if so, to what extent to reduce a plaintiff's recovery by the amount of such payments, in light of all the surrounding facts and circumstances.

In that regard, a concurring opinion in *Senn* forms the template for how Alabama courts view the modified collateral source rule today, as follows:

> "[Section] 12-21-45[] altered the collateral source rule in civil actions in which a plaintiff seeks damages for any medical or hospital expenses. Under § 12-21-45, a defendant has the option of introducing evidence that a collateral source has paid or will pay or reimburse, a plaintiff for his medical or hospital expenses, and if a defendant elects to introduce such evidence, a plaintiff may present evidence as to the cost of obtaining the reimbursement or payment of medical or hospital expenses, including evidence of any right of subrogation claimed by the collateral source. … [I]n such cases a jury must consider all of the evidence introduced at trial regarding payments from collateral sources and determine to what extent the plaintiff is entitled to recover his medical or hospital expenses …."

*Senn*, 619 So.2d at 1326 (Hornsby, C.J., concurring specially); *see also McCormick*, 99 So.3d at 1250 (recognizing that a modified version of the collateral source rule, as set forth in Ala. Code § 12-21-45, remains in effect, and explaining that if collateral source evidence is admitted at trial,

the jury would have "the discretion to adjust the damages award on account of the evidence relating to collateral-source payments"); *Crocker*, 87 So.3d at 1193 ("Section 12-21-45 modifies the substantive component of the collateral-source rule. … Whereas under the common-law collateral-source rule, a jury could not in any case decrease the amount of damages awarded on account of a plaintiff's receipt of third-party payments of medical and hospital expenses, under § 12-21-45 a jury can now decide, based on the unique facts of each case, whether such a reduction would be appropriate. … Section 12-21-45 does not dictate any particular outcome, but, rather, it allows a jury to make its own informed decision as to the effect of third-party payments of medical and hospital expenses on a plaintiff's recovery.") (citations omitted); *Killian v. Melser*, 792 F. Supp. 1217, 1220 (N.D. Ala. 1992) ("Alabama trial judges are routinely allowing the introduction of evidence rendered 'admissible' by § 12-21-45 but thereafter charging the jury that it may '*consider*' the said evidence for whatever it may be worth"); *see generally Marsh v. Green*, 782 So.2d 223, 233 n.2 (Ala. 2000) (pointing out that § 12-21-45's silence on damages awards in cases involving collateral source payments "gives both a plaintiff and a defendant latitude to explore various arguments about windfalls").

This interpretation is reinforced by Alabama's Pattern Jury Instructions, which account for § 12-21-45 as follows: "There is evidence that a third party (satisfied) (paid) (name of plaintiff)'s medical expenses, and (name of defendant) asks that you reduce the amount of any award for medical expenses. … You may consider all this evidence. Whether you reduce the award in any amount is up to you." 1 *Alabama Pattern Jury Instr. Civ.* § 11.15 (3d ed.). Likewise, an Alabama treatise explains that, under the state's modified incarnation of the collateral source rule, "juries now decide, based on the facts of each case, the effects of any third-party payments of the plaintiff's expenses. … The statute abrogating the collateral source rule … allows the jury to make its own decision as to the effect of third-party payments of medical and hospital expenses on the plaintiff's recovery." Jenelle Mims Marsh, *Alabama Law of Damages* § 12:5 (6th ed.).

Confronted with this body of Alabama authorities developed over the last 20 years, the Court does not find persuasive the Government's position that the analysis must begin and end with one sentence of *dicta* extracted from the *Senn* majority opinion and presented without

context.[5]  As Alabama appellate courts, commentators, and pattern jury charges all recognize, § 12-21-45 did abrogate the common-law evidentiary prohibition against introducing evidence of collateral source payments for medical care in the personal injury context; however, it left open the question of whether and to what extent a damages recovery in a particular case could or should be reduced to account for those payments.  That question is reserved for the fact finder's discretion, based on the unique facts and circumstances of the case.

Insofar, then, as the Government moves for summary judgment on the ground that Washington is barred under *Senn* as a matter of law from recovering medical or hospital expenses for which Medicare or the VA has already paid, the Rule 56 Motion is properly **denied**.

As an alternative basis for seeking summary judgment, defendant sketches out in skeletal form an argument that Washington cannot recover from the Government for medical expenses already paid by Medicare and the VA because those payments "are amounts paid by the United States." (Doc. 35, at 4.)  But the Government cites no authority to support this proposition; to the contrary, its reply brief cites appellate authority supporting the opposite result, at least as to Medicare payments.  *See Berg v. United States*, 806 F.2d 978, 986 (10th Cir. 1986) (holding "that the district court properly characterized the Medicare benefits received by Berg as a collateral source" because those benefits are paid from a separate fund, which is supplied in large part by taxes imposed on employees and employers, such that they are logically collateral).  Additional research suggests that *Berg* is not an outlier decision.[6]  Although the Government maintains that

---

[5]     In its reply brief, the Government argues that "the decision of the Alabama Supreme Court controls" and that *Senn* "appears to be good law." (Doc. 45, at 1-2.)  But no one is suggesting that *Senn* is invalid or that it has somehow been reversed by subsequent decisions of the Alabama Court of Civil Appeals.  Rather, the point is that this one sentence of *dicta* does not state that plaintiffs can never recover collateral source payments, and that lower courts, commentators and pattern jury instructions have all interpreted the statute in a manner that allows the finder of fact to determine at trial what, if any, reduction in damages is appropriate for collateral source payments, based on the facts and circumstances of a particular case.  *Senn*, read as a whole, is entirely consistent with that construction.

[6]     *See, e.g., Amlotte v. United States*, 292 F. Supp.2d 922, 932 (E.D. Mich. 2003) ("The Court finds, therefore, that future payments under Medicare Part A and Part B operate more like an insurance policy obtained through the contribution of the tortfeasor or a person on whom the tortfeasor is dependent, rather than like a gratuitous payment.  Those payments should, therefore, be characterized as coming from a collateral, rather than a direct, source."); *Rofail v.*
(Continued)

"[a] plaintiff is barred from recovering damages already paid by the tort-feasor" (doc. 45, at 2), it comes forward with no authority supporting the premise that the payments made by various federal entities for Washington's medical care qualify as "amounts paid by the United States" for purposes of this rule. Again, *Berg* and its progeny are to the contrary, at least as to Medicare payments.

Finally, the Court cannot credit on summary judgment the cryptic reassurance by the Government's counsel that "[a]ny issues involving the Medicare program or the Department of Veterans Affairs in this litigation will be dealt with by the undersigned." (Doc. 35, at 4.) What does that mean? Is counsel suggesting that Medicare and the VA do not have liens or claims for repayment against Washington for medical bills they have paid? Or that counsel intends to work with Medicare and the VA programs to waive or release any such liens or claims? Is this a done deal, or is it just something that counsel anticipates being able to "deal with" at an appropriate time? As plaintiff correctly asserts, there is simply insufficient factual content to warrant entry of Rule 56 relief on that basis at this time.[7]

---

*United States*, 2009 WL 1703236, *14-15 (E.D.N.Y. June 18, 2009) (concluding that both Social Security disability benefits and Medicare benefits should be treated as payments from a collateral source that do not offset the government's tort liability); *Wildermuth v. Staton*, 2002 WL 922137, *3 n.2 (D. Kan. Apr. 29, 2002) (citing existence of "numerous cases from other jurisdictions that have held Medicare payments to be a collateral source, as long as the plaintiff paid FICA taxes supporting the Medicare fund").

[7] That said, it should be a simple matter for the parties to ascertain whether Medicare and VA programs are pursuing liens for Washington's medical bills, and if not, to prepare appropriate binding documents / stipulations to that effect. If indeed Washington has not paid and can never be liable to pay or repay those amounts, then the Government may have a compelling argument that such sums are not recoverable as damages herein. *See, e.g., Costa v. Sam's East, Inc.*, 2012 WL 3206362, *4 (S.D. Ala. Aug. 6, 2012) ("As a matter of black-letter Alabama law, plaintiff can recover medical expense damages only for amounts that plaintiff either has paid or is obligated to pay."); *Shelley v. White*, 711 F. Supp.2d 1295, 1297-98 (M.D. Ala. 2010) (citing "Alabama rule that medical expense damages are to be allowed only for doctor's and medical bills which the plaintiff has paid or has become obligated to pay") (citations and internal quotation marks omitted); Marsh, *Alabama Law of Damages* § 36:3 ("The plaintiff is not required to prove that he actually paid the claimed medical expenses but only that he was liable for payment of them."). Of course, plaintiff is entitled to (and will be granted, at an appropriate time if the requisite stipulations and/or documents are finalized) an opportunity to rebut this argument, which defendant presented for the first time in its reply brief (doc. 45, at 3). *See generally Lee v. Monroe County Heritage Museum, Inc.*, --- F. Supp.2d ----, 2014 WL (Continued)

**III.    Conclusion.**

For all of the foregoing reasons, the Government's Motion for Partial Summary Judgment (doc. 35) is **moot** as to the question of whether this case will be tried to a jury, given that all parties have agreed (and at least one court order has clarified) that trial of this action will be **non-jury**.  In all other respects, the Motion is **denied**.

DONE and ORDERED this 24th day of April, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

517492, *4 (S.D. Ala. Feb. 7, 2014) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.").